MERCER COUNTY TRACTION COMPANY

*v.*

UNITED NEW JERSEY RAILROAD AND CANAL COMPANY et al.

[Filed January 20th, 1904.]

1. Where a traction company has filed a description of a route in the secretary of state's office, a judgment holding proceedings for an extension thereof invalid because proper consent was not procured for the original route, and there was no route to extend, leaves the filed map and description unaffected, with the power in the company to procure new consents and a fresh ordinance authorizing construction on the route.

2. Under *P. L. of 1893 p. 306 § 6*, requiring a railroad corporation organized under that act, before constructing a new road, to file in the office of the secretary of state a description and map of the route, showing its courses and distances, a map showing the termini with the route from one to another following a variety of courses, but nothing to determine the courses or indicate the points of the compass, is insufficient, so that notwithstanding the filing of such map the company may begin proceedings anew for the establishment of the route.

3. Consents of abutting property owners to the establishment of a railway route, whose only limitation is that the road be built along the

highway in front of the consenter's land, are valid, though executed before the filing of the description and map of the proposed route in the secretary of state's office.

4. No legal presumption arises that consents to the establishment of a railway route were given with reference to a map previously filed in the secretary of state's office when that map was defective.

5. A resolution by the board of directors of a corporation that it should construct a line of railway, and that the president and secretary were authorized to execute all papers to procure ordinances for that purpose, was sufficient to authorize the president and secretary to execute, under the corporate seal, an acceptance of an ordinance subsequently passed authorizing the construction of the road.

6. Where an ordinance was passed authorizing the construction of a railroad, and an acceptance thereof executed under the corporate seal by the president and secretary, the presumption of their authority, arising from such execution, is not rebutted by the absence of any written minutes showing that a meeting was held at which they were empowered to execute it.

On petition to have the manner by which the petitioner, the trolley company, shall cross the tracks of the respondents defined.

*Mr. John H. Backes,* for the petitioner.

*Messrs. Charles E. Gummere* and *Alan H. Strong,* for the respondents.

REED, V. C.

The petitioner was organized under the act of 1893, entitled "An act to authorize the formation of traction companies," &c. *Gen. Stat. p. 3235.* Its certificate of incorporation was recorded in the clerk's office of Mercer county and filed in the secretary of state's office on July 31st, 1899. A description of the route was filed in the secretary of state's office on May 21st, 1903. The road is therein described as a single-track railway, upon and along a certain public highway in the township of Hamilton, Mercer county, known as the Crosswicks and Trenton Turnpike road, and also known as the White Horse road. It begins where this highway intersects the centre line of another highway leading from Hamilton Square to North Crosswicks, and runs along the White Horse road certain courses and dis-

tances to a point in said road, which point is the northerly terminus of petitioner's road. With this description a map was filed, exhibiting the line of the road with its courses and distances.

On May 21st, 1903, a petition was presented to the township committee of the township of Hamilton, asking permission to construct the said road, which permission was granted by an ordinance passed on June 11th, 1903. This ordinance was accepted within thirty days from its passage by an instrument under the seal of the corporation, signed by its president and secretary. Permission was also granted by the board of chosen freeholders of Mercer county.

The route of petitioner's road crosses the line of the steam railroad of the respondents, where the same crosses the White Horse road, at Yardville. The prayer of the petition is that the mode in which this crossing shall be made shall be defined by this court.

The first objection interposed by the respondents is that the filing of the present route is a nullity, because the same company (the Mercer County Traction Company, the petitioner) had already, on December 7th, 1899, filed a description and map of a route along the same highway, extending from Yardville southerly to the Mercer county line. This route coincides with the present route from Yardville south to North Crosswicks. The insistence is that the location of the route defined in the description and map filed (of December 7th, 1899) excludes the company from filing a new route over a part of the same courses.

It appears that upon the assumption that the route filed on December 7th, 1899, and the ordinance granting permission to construct its road upon that route, was valid, another route and map was filed on August 23d, 1901, as an extension of the road, a description of which had been filed on December 7th, 1899, and a permissive ordinance was passed by the township of Hamilton to construct the extension described in the description and map of August 23d, 1901. The extension crosses the respondents' railroad at Yardville, and upon a petition similar to the

present it was held by this court that the township ordinance granting permission to build the first road, the route of which was filed on December 7th, 1899, was void, because no legal consents had been filed with the township clerk previous to the passage of the ordinance by the township committtee giving consent to the construction of the road on the route defined in the description and map of December 7th, 1899; that there was therefore no existing road from Yardville to the county line from which an extension could be made, and so the extension defined in the description and map filed on August 23d, 1901, was a nullity. *Mercer County Traction Co. v. United New Jersey Railroad and Canal Co., 19 Dick. Ch. Rep. 588.* The solicitor for the respondents insists that the force of that decision was spent when it declared that the township ordinance, giving permission to lay the road in accordance with the route defined in the description of December 7th, 1899, was invalid; that the decision still left the filed description and map unaffected, with the power in the company to acquire new consents and a fresh ordinance. This position, respecting the effect of the former decree upon the filed route and map of December 7th, 1899, is manifestly sound.

The counsel for petitioner, however, directs attention to the fact that the map filed on December 7th, 1899, did not comply with the requirements of the sixth section of the statute of 1893, which provides that the corporation shall, before the beginning and construction of an extension or new line, file in the office of the secretary of state a description of route of such extension or new line, together with a map exhibiting the same with the courses and distances thereon. Upon an inspection of the map, it appears that there are no written statements of distances, nor of courses, along the route designated thereon. The termini are exhibited, with a route running from one to the other, following a variety of courses. Upon the map there is a scale, by applying which to each of the several courses the distance could be ascertained with sufficient certainty to perhaps comply with the requisition of the statute. There seems, however, to be nothing upon the map from which the courses can be deter-

mine'd. The cardinal points of the compass are not even shown, although, in my judgment, if they were exhibited the map would not comply with the requirements of the statute, for it is impossible to believe that the legislature intended that one who inspected the map must be an engineer, or employ an engineer to work out the courses from such data. On account of this failure to state the courses, I am of opinion that the map filed December 7th, 1899, was not in compliance with the sixth section of the statute of 1893. Because of this defect in filing the original description and route, I am of the opinion that the petitioner had the right to begin its proceedings *de novo*.

It is to be observed, also, that the exclusive right of the petitioners to construct a road under the authority given them by the filing of the papers of December 7th, 1899, had expired, because no attempt at construction, within six months, had been made by them. Whether, after the exclusive right to use the route had thus expired, this company was in the same position as any other corporation, with the right to file a new description and map, it is not necessary to decide.

The second objection by the respondents is directed to the sufficiency of the consents of the abutting owners presented to the township committee, as a condition precedent to the passing of the ordinance, giving consent to the construction of the road.

It is not denied that the owners of a majority of the lineal feet of land fronting on that part of the highway along which the present route runs were duly signed and filed with the clerk of the township before the passage of the ordinance. The point made is that the papers so filed with the clerk of the township must be regarded as consents to the construction of a road to be built by the petitioner, in accordance with the description and survey filed on December 7th, 1899.

The acknowledgments of nearly all the persons signing these consents were taken on April 29th, 1903, before the present description of route and map were filed in the secretary of state's office, the date of which filing was, as already observed, on May 21st, 1903.

The theory adopted by the court of errors, in *Currie* v. *Atlantic City, 37 Vr. 671,* was that the consents were not grants to the railway company, but were authorizations given to the municipality as the agents of the consenting abutters and of the public to grant the permission applied for, if in the discretion of the governing body it chose to do so.

While the case decides that when the governing body has once acted upon the consents the efficiency of the consents is spent, nevertheless, until the corporation so acts, I do not see why the authorization might not be as broad as any other power of attorney. The consents in the present instance were of the most general character. The only limitation contained in the consents was that the road built by the petitioning company should be constructed along the highway in front of consenter's land. The consents were in the following language:

"We, the owners of property fronting on the public highway, in the township of Hamilton, county of Mercer and State of New Jersey, leading from the village of White Horse in the said township, southerly by way of North Crosswicks to the village of Allentown in the county of Monmouth in said state, and formerly known as the White Horse road, do hereby consent to the construction, maintenance and operation of a street railway by the Mercer County Traction Company, through and upon the said public highway, in the said township, and hereby consent that the township committee of the township of Hamilton, grant permission to the said Mercer County Traction Company to construct, maintain and operate the said street railway."

The fact that the consents were given before the last description and route was actually filed, I think of no importance, except, perhaps, upon the point that the consents must be regarded as referable to a description and route already on file. Of the efficacy of consents given before the actual filing of a description and map, I have no doubt. *G. & W. Railway Co.* v. *New York Central and Hudson River Railroad Co., 163 N. Y. 228, 234.*

If the map, filed on December 7th, 1899, was defective, there arises no legal presumption that the consents were given in reference to it. Nor, having regard to the situation and the general language of the consents, in my judgment, no inference

of facts arises that the consents were made in reference to the original survey. In my judgment the consents were a sufficient authorization to the township committee to pass an ordinance, giving permission to the petitioner to construct and maintain a road upon any route thereafter filed if the township committee, in its judgment, thought it wise to do so. The consents endowed the township committee with plenary power to pass an ordinance without conditions or with such conditions for the benefit of the public or protection of the abutters as the municipal body thought fit.

It is next objected that there was no legal acceptance of the ordinance, because there was no meeting of the board of directors at which the president and secretary were specifically authorized to sign and affix the seal of the corporation to the instrument filed as an acceptance. The provision which presently controls the matter of acceptance is to be found in the act of 1896. *P. L. of 1896 p. 329 § 1.* It provides:

"That the permission granted by the municipal body shall be binding and effective, if an acceptance thereof, in writing, by the corporation making such petition shall be filed within thirty days after receiving notice thereof, with the clerk or other equivalent officer of the governing body granting such permission."

The validity of many corporate acts depends upon a resolution of the board of directors, regularly assembled as a board, of other acts by the implied power given to the agent who executes it, in the course of corporate business, or by ratification resulting from acquiescence in such acts by the individual officers of a corporation. Assuming that the acceptance of this ordinance was such a corporate act as must be executed by authority of the board of directors, assembled at a legal meeting, I am of the opinion that the president and secretary were invested with the power to execute the acceptance filed. By a resolution, passed at the meeting of the directors held on May 20th, 1903, it was resolved that the company should construct this line of railway, and it was further resolved that the president and secretary were authorized to execute all papers on behalf of the company to procure ordinances for that purpose. Under that authority

Mercer County Trac. Co. *v.* United N. J. R. R. and C. Co.

the petition presented to the township committee seems to have been prepared. The ordinance passed seems to have been exactly the same as the ordinance presented. The procuration of this ordinance was not complete until it was accepted. In my judgment this authorization was broad enough to cover the acceptance of the ordinance thus procured by the president and secretary.

Again, the acceptance being under the approved seal of the corporation and signed by the president and secretary, is presumed to be the duly-authorized act of the corporation. *Legget* v. *New Jersey Manufacturing and Banking Co., Sax. 541; Parker* v. *Washoe Manufacturing Co., 20 Vr. 465.*

There is nothing to refute this presumption, save that it does not appear in the minutes of the corporate proceedings that any meeting was held at which the president was empowered to sign such an instrument. The minutes are certainly not conclusive as to the non-existence of a fact not stated therein. In this case neither the secretary nor any director was called to show that no such meeting was held at which authority was given to the president and secretary to execute this paper. In my judgment the presumption of authority, arising from the execution of the paper under the seal of the corporation and signature of the president and secretary, is not rebutted by the absence of written minutes of a specific authorization.

The three points discussed are, as appears to me, the only substantial objections raised against the right of the petitioner. In my judgment there should be a decree fixing the method of crossing.