SOPHIA HOWELL, substituted administratrix, &c.,

*v.*

JEREMIAH STEELMAN et al.

[Decided December 14th, 1909.]

1. The court in construing a will must search for testator's intention in the light of the facts, placing itself as nearly as possible in his position.

2. Testator gave a nominal sum to each of his five children, gave the balance to his wife for life, or during widowhood, with a gift over, on her death or remarriage, to his "surviving heirs" equally, and provided that charges against his "heirs, their husbands or wives as contracted * * * by them with me," should be deducted from their share. A daughter, whose husband was indebted to testator, died before testator, leaving children.—*Held*, that the words "surviving heirs" meant surviving children, and referred to such of the testator's children as should be surviving at the date of their mother's death or remarriage, and that the children of the deceased daughter did not take.

Heard on bill, answer, replication and proofs in open court.

This is a bill filed to procure the construction of the will of Andrew S. Godfrey and for directions with respect thereto. The facts sufficiently appear in the opinion.

*Messrs. Melosh & Morten,* for the complainant.

*Messrs. French & Richards,* for Andrew G. Steelman et al., children of Jeremiah and Kate Steelman.

*Mr. Joseph L. Thomas,* for Jeremiah Steelman.

GARRISON, V. C.

Andrew S. Godfrey, the testator, was a sea captain living at Tuckahoe, Atlantic county, New Jersey. On the 11th day of July, 1885, he made his will. At that time his wife was living, as were also five of their children, Theophilus W., Anna M. (Bailey), Hannah (Campbell), Sophia (Howell) and Kate (Steelman). Prior to this time, and as the result of transactions which need not be detailed, Jeremiah Steelman (the husband of Kate, who was one of the daughters of the testator) was indebted to the testator in about $2,000.

By his will the testator gave to each of his five children, by name, the sum of one dollar. He then gave to his wife all the balance of his estate during her natural life, or during the time she remained his widow. He then provided

"in the event of my wife's death or should marry again, it is my will and I do order that whatever there may be of my worldly possessions, real, personal or mixed, shall be equally divided among my surviving heirs, after assigning to her her right of dower as my former widow.

"And it is my will and I do order that wherever there may be found any obligations, or charges be made and substantiated by documentary evidence or otherwise proven against my heirs their husbands or wives as contracted or executed by them with me, that the same be first deducted from their share of my estate, but no interest shall be charged on any such charges or debts against them."

Kate Steelman died on the 22d day of October, 1888, leaving her husband, Jeremiah, and four children surviving her. The other four children of the testator all survived their father. Andrew S. Godfrey, the testator, died in January, 1899. Hannah C. Godfrey, the widow, died on the 30th day of April, 1907.

The question to be determined is, What did the testator mean when he provided that after the widow's interest ceased the property should be divided equally among "my surviving heirs?"

I think it perfectly plain that what he meant was "children," and that the phrase, if written so as to express his exact meaning, would have read "my surviving children."

Of course, no one is an heir to the living, and when the tes-

tator used the words "my surviving heirs" he was speaking with reference to some persons who were to be surviving at the time that the life estate or intermediate estate of the widow fell in. It was this class, then surviving, that he desired to provide for.

We must search, therefore, his intention in the light of such facts as we have, placing ourselves, as nearly as we can, in his position, so as to get his point of view as nearly as possible. At the time that he drew his will, as heretofore stated, it is shown that the husband of Kate Steelman, one of his daughters, was indebted to him in a considerable sum of money. It was shown that he had at that time, including Kate, five children. Kate died before he did, but he did not change his will, which strongly evidences to my mind that in using the words "surviving heirs" he meant, as before stated, "surviving children."

From the clause of the will above quoted, providing for the charging of obligations against the interests of his heirs, another strong indication of his meaning is obtained. Therein he provides that if there are any obligations against "my heirs their husbands or wives as contracted or executed by them with me," the same are to be first deducted "from their share of my estate." It is quite evident that he uses the word "heirs" here instead of "children," and what he meant to say was that

"if any of my children, or the husbands or wives of any of my children, have borrowed any money from me, before such surviving child of mine shall receive his or her share, the debt due me from such child, or from the husband or wife of such child, shall first be deducted."

This provision was evidently put in the will in view, partly if not wholly, of the fact that Jeremiah Steelman, the husband of one of these children, Kate, was indebted to him in a considerable sum of money, and he did not propose that the share which Kate would get, if she lived to the period of distribution, should go to her in its entirety while her husband owed the testator this large sum of money.

As before stated, Kate died during the lifetime of her father, the testator, and unless the word "heirs" is held to mean "children" the result is that the children of Kate inherit, and there is no deduction from their share because the debt due the tes-

tator was not contracted by the husband or wife of any of the "heirs."

If the testator did not mean "children" when he said "heirs," he certainly would have changed his will after Kate died, because it is inconceivable that he should first draw a will which, upon its face, bears evidence of the intention to safeguard the estate against debts contracted with him by his children, and then, when the situation was altered by the death of one of the children, leave the will unaltered so that in the administration of his estate exactly the opposite of his intention would result.

The courts have frequently held that the word "heirs" or "surviving heirs" meant "children." *Demarest* v. *Hopper* (*Court of Errors and Appeals, 1850*), *22 N. J. Law (2 Zab.) 599* (at p. 611); *Bruere* v. *Bruere* (*Vice-Chancellor Van Fleet, 1882*), *35 N. J. Eq. (8 Stew.) 432* (at p. 434); *Davis* v. *Davis* (*Chancellor Runyon, 1884*), *39 N. J. Eq. (12 Stew.) 13* (at p. 14); *Eldridge* v. *Eldridge* (*Chancellor Runyon, 1886*), *41 N. J. Eq. (14 Stew.) 89* (at p. 91); *Miller* v. *Metcalf* (*Supreme Court, Connecticut, 1904*), *58 Atl. Rep. 743; note to 2 L. R. A. 457.*

The result is that the will should be construed as above stated, and the substituted administrator should be directed to distribute the estate in accordance with such construction.