Complainant seeks an injunction to restrain defendants from closing or obstructing what is alleged to be a public street or road in the borough of West Long Branch.
The answer denies the lands in question to be a public road, and claims they have been used for travel only by permission of the owners of the fee, and also claims the lands have been so used for a width of only twelve or fifteen feet, as against the borough's claim of a public use of fifty or sixty feet.
The proofs show that the road in question was opened about 1892 by J.H. McIntyre, the owner of the fee, both for his own accommodation to reach High street, now called Wall street, from his property, and also with the intention of having it become a public street, extending northerly from Wall street to Broadway, whenever the owners of lands north of his property would open the street through their lands. For his own convenience in driving to and from his property *Page 104 
into Wall street, Mr. McIntyre lowered the strip used for the roadway about eight or ten inches below the grade of the adjoining land, for a width of fifty or sixty feet and for a length of two hundred and fifty-two feet six inches extending northerly through his lands from the northerly side of Wall street. On the southerly side of Wall street, directly opposite this roadway, Norman L. Munro, about the same time, had opened and dedicated a street of like width extending southerly through his property and which has since been known as Monroe avenue. At this time, in 1892, the property was in Eatontown township, and in 1908 it was incorporated as part of the territory of the borough of West Long Branch.
Mr. McIntyre had purchased part of his property in 1891 from one Isaiah Lane, and, on opening the roadway, Lane asked for, and McIntyre gave him permission to, use it to enable Lane to drive into his farm, in the rear of McIntyre's lands, from Wall street.
The McIntyre place, eventually, changed owners and was divided into two parcels, the portion lying to the east of the roadway, being now owned by the defendant Hoch, and the westerly portion by the defendant Tilton.
Since 1892 the roadway has been used continuously, not only by the occupants of the Lane farm, but also by the general public, and particularly by people who purchased farm produce from the Lane's and by others who drove through the roadway and around Lane's house into the public street known as Locust avenue, for the purpose of reaching the golf links and for other purposes.
On the westerly side of the road there was a fence for a number of years, and on the easterly side — fifty or sixty feet distant — there was a privet hedge and also a sidewalk or foot path. Some graveling, filling in and scraping has been done on the traveled part of the roadway by both the township and borough during the past twenty or twenty-five years, and during the last eight or ten years some effort was made by the owners of what is now the Hoch property, to obstruct or to confine the travel to the middle of the driveway by placing posts, or rails, or stones, or pieces of brick, or *Page 105 
a fence, on the easterly side or at the entrance to the driveway from Wall street, to keep vehicles off the grass part of the roadway and to compel them to use the graveled portion, which is said to be from twelve to twenty feet in width, and which is, approximately, in the middle of the roadway; these obstructions were promptly removed by the borough officials and were ignored by the traveling public.
The clear preponderance of proof shows this roadway to have been continuously used by the public as a street or road since 1892, and this fact is conceded by counsel for defendants on pages 49 and 50 of the transcript. But it is contended that this user was not adverse to the defendants' right, because such use was originally expressly granted and permitted by defendants' predecessor in title, Mr. McIntyre.
There is not the slightest evidence to support this contention; the record does show that McIntyre, in 1892, gave Isaiah Lane permission to use the road, and it also shows that the defendant Dr. Hoch notified Louis Lane, the son of Isaiah, in 1922, that this permission was then and there revoked.
No such permission was ever given to or asked for by the public. On the opening and grading of the road by Mr. McIntyre in 1892, the public began to use it, and has continued to do so, up to the present time, without interruption and without serious interference from any owner of the abutting properties, until defendants erected a fence at the Wall street entrance to the roadway in 1923, which the borough officials removed and which resulted in this litigation.
Defendants further contend that the proofs do not show the public use of the roadway for its full width of fifty or sixty feet, for the evidence is that the traveled and also the graveled part of the roadway has been from five to twenty-four feet in width, but it is also in evidence that when the usual traveled track was blocked with snow, or was, for any other reason, unsuitable for travel, that the public drove over and used the grass part of the roadway, extending from the gravel to the side of the road, and that this was done so frequently as to become an annoyance to Mrs. Julian, Mr. *Page 106 
Hayes and other former owners of the Hoch property, and it was for this reason that some of the obstructions mentioned, such as the post and rails and pieces of a brick or culvert pier, were placed on the grass part of the roadway.
The proofs are convincing that the roadway in question is, by reason of its continued adverse use since 1892, a public street, to the width it was originally opened by Mr. McIntyre and which I understand corresponds to the width of Monroe avenue on the south side of Wall street.
Under the authority of Railroad Co. v. Parker, 41 N.J. Eq. 489; Renwick v. Hay, 106 Atl. Rep. 547; Man v. Vockroth,94 N.J. Eq. 511, and other cases, the power of the court to grant the relief sought under the situation here presented, showing what may be properly regarded as repeated trespasses on a public right, is well settled, and a decree will be advised for complainant.
NOTE. — This case should have appeared in an earlier volume of the Equity Reports. — REP.